## UNITED STATES DISTRICT COURT
## FOR DISTRICT OF UTAH

| | |
|---|---|
| MARGUERITE E. HIPWELL, individually and as General Personal Representative of the Estate of KEITH W. HIPWELL, ) ) ) ) ) | FILE NO.: 1:20-cv-00063-JNP |
| Plaintiff, ) | |
| v. ) | |
| ) | **CIVIL ACTION COMPLAINT** |
| AIR & LIQUID SYSTEMS CORP., as successor by merger to BUFFALO PUMPS, INC. ) ) ) | **JURY TRIAL DEMANDED** |
| ) | |
| ALDRICH PUMP LLC ) | |

MARGUERITE E. HIPWELL,
individually and as General Personal
Representative of the Estate of KEITH
W. HIPWELL,

       Plaintiff,

v.

AIR & LIQUID SYSTEMS CORP., as
successor by merger to BUFFALO
PUMPS, INC.

ALDRICH PUMP LLC

CBS CORPORATION, f/k/a
VIACOM, INC. (successor by merger
with CBS CORPORATION f/k/a
WESTINGHOUSE ELECTRIC
CORPORATION and as successor-in-
interest to BF STURTEVANT)

CBS CORP., a Delaware Corp., f/k/a
VIACOM, INC., successor by merger
to CBS Corp., f/k/a WESTINGHOUSE
ELECTRIC CORP.

CLEAVER BROOKS, INC., f/k/a
AQUA-CHEM, INC., d/b/a
CLEAVER-BROOKS DIVISION,
Individually and as successor-in-
interest to SPRINGFIELD BOILERS

TUTHILL CORPORATION (COPPUS
TURBINES)

CRANE CO.

ELLIOTT COMPANY, f/k/a
ELLIOTT TURBO MACHINE CO.,
INC.

FOSTER WHEELER ENERGY
   CORP.

FILE NO.: 1:20-cv-00063-JNP

**CIVIL ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

GARDNER DENVER, INC. )
)
GENERAL ELECTRIC COMPANY )
)
GOULDS PUMPS, LLC )
)
GRINNELL CORPORATION )
)
IMO INDUSTRIES, INV., f/k/a IMO )
DELAVAL, INC. )
)
INGERSOLL RAND CO. )
)
THE GORMAN RUPP COMPANY, )
individually and as successor-in- )
interest to GRISCOMB-RUSSELL )
COMPANY; )
)
SUPERIOR BOILER WORKS, INC. )
)
TRANE TECHNOLOGIES )
COMPANY, LLC )
)
WARREN PUMPS, LLC )
)
ZURN INDUSTRIES, LLC, f/k/a )
ZURN INDUSTRIES, INC., )
individually and as successor-by- )
merger to ERIE CITY IRON WORKS; )
)
Defendants. )

## CIVIL ACTION COMPLAINT

PLAINTIFF, Marguerite E. Hipwell, individually and as personal representative of the Estate of Keith W. Hipwell, Deceased, ("Plaintiff's Decedent" and "Mr. Hipwell") by and through her attorneys, The Nemeroff Law Firm, PC, to hereby bring this Civil Action Complaint, for compensatory and punitive damages, whereof the following is a statement:

1.      This action is brought pursuant to the Utah Wrongful Death Act, §78B-3-106, *et seq.* for the wrongful death of Plaintiff's Decedent on behalf of all persons entitled to recover damages.  Additionally, pursuant to Utah Code Ann. 78B-3-107, *et seq.*, Plaintiff brings this survival action on behalf of all heirs of Plaintiff's Decedent.

2.      Plaintiff's Decedent was diagnosed with mesothelioma, a signal tumor for exposure to asbestos, on or about December 19, 2019 and died from that asbestos-related disease on January 3, 2020 in Weber County, Utah.

## JURISDICTION AND VENUE

3.      This Court has personal jurisdiction because Defendants are duly licensed to do business in the State of Utah and/or at all material times are or have been engaged in business in the State of Utah.

4.      Further, this Court has diversity jurisdiction over the parties because the Plaintiffs are citizens of the State of Utah and none of the Defendants are citizens of the State of Utah. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

5.      Pursuant to 28 U.S.C.A. §1391(2) venue is proper in this judicial district because a substantial part of the events or omissions occurred in the State of Utah.

## PARTIES

6.      Plaintiff, Marguerite E. Hipwell is a citizen and resident of Weber County in the State of Utah. Plaintiff was appointed Personal Representative of the Estate of Mr. Hipwell, deceased, by the Second Judicial Circuit Court of Weber County, State of Utah, Ogden Department on May 13, 2020. Plaintiff maintains this action on behalf of the estate pursuant to her powers under Utah Uniform Probate Code, § 75-3-701, *et seq*.

7.      Plaintiffs bring this action for monetary damages as a result of Mr. Hipwell, contracting an incurable asbestos cancer that was the result of breathing asbestos dust.

8.      During the time period that Mr. Hipwell was exposed to asbestos, the manufacturers of asbestos products affirmatively chose not to adequately warn of the lethal hazards of breathing asbestos dust, often deciding not to issue any warning at all, despite the fact that these asbestos companies knew that breathing small amounts of asbestos dust could be fatal. When the asbestos dust is breathed in, it can cause asbestos cancer many decades later. The scientific and regulatory communities around the world are in unanimous agreement that all types of asbestos released from asbestos products cause cancer, and that there is no safe level of exposure to asbestos.

9.      Mr. Hipwell's work placed him around asbestos-containing products, including but not necessarily limited to gaskets, packing, boilers, valves, pumps, valves, thermal insulation, and refractory cement all of which can release vast amounts of asbestos dust into the air when disturbed. At present, it is known that Mr. Hipwell's U.S. Navy and industrial employment related to these allegations includes the following work sites:

    1951-1956:  US Navy, Boilerman on the USS Foss and the USS Hamner.

    1956-1992:  Hill Air Force Base, Ogden, UT Boiler Plant Operator and
                Supervisor.

Mr. Hipwell's exposure to asbestos occurred when he worked as a boilerman aboard the USS Floss and the USS Hamner in the United States Navy from 1951 to 1956 and a boiler plant operator and supervisor from 1956 through the 1970s at Hill Air Force Base, Ogden, UT. Asbestos dust was generated and released into the air when Mr. Hipwell, and other co-workers in close proximity, removed, manipulated and replaced asbestos-containing products and equipment, including but not necessarily limited to: gaskets, packing, boilers, valves, pumps, valves, thermal insulation, and refractory cement via cutting, chipping, mixing, sanding, sawing, scraping and sweeping. The asbestos dust generated during the removal, manipulation and replacement process is invisible to the naked eye. Investigation continues into Mr. Hipwell's work with asbestos products and his exposures to those products.

10.     All of the named defendants listed on the caption and on the attached list, which is incorporated by reference herein, are foreign corporations who are amenable to jurisdiction in the courts of Utah by virtue of their respective conduct of substantial and/or systematic business in Utah which subjects them to the jurisdiction of the Utah courts pursuant to the Utah Long-Arm Statute. Each defendant corporation does or in the past mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, which are or in the past were sold, distributed, and used in Utah. The plaintiff was exposed to various asbestos-containing products while working at various jobs listed in Paragraph 9 above.

## FIRST CAUSE OF ACTION
### NEGLIGENCE

11.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

12.     At all material times, Defendants are or were miners, manufacturers, distributors, processors, importers, converters, compounders, and/or retailers of asbestos and/or asbestos-containing products, materials or equipment.

13.     The Defendants, acting through their agents, servants, and/or employees caused, and have caused in the past, certain asbestos and asbestos-containing materials, products or equipment to be placed in the stream of interstate commerce with the result of that said asbestos and asbestos-containing materials, products, or equipment came into use by the plaintiff.

14.     The dangers of breathing asbestos were first published in the medical literature in the 1890s. By the late 1950s, there were hundreds of medical articles highlighting the dangers of being around asbestos dust. Confidential corporate documents from many of the named defendant companies reveal that (a) the dangers of asbestos were well understood; (b) asbestos was cheaper to use in the products than replacement substances such as clay; (c) the product manufacturing industry actively fought governmental regulation and the banning of asbestos.  To this day industry has been successful in their lobbying efforts to keep asbestos legal in the United States.

15.     Throughout the course of his employment, Mr. Hipwell worked with and was exposed to the asbestos and asbestos-containing materials, products, or equipment mined, manufactured, processed, imported, converted, compounded, and/or sold by the Defendants.

16.     During the course and scope of his employment, Mr. Hipwell was exposed to defendants' asbestos and asbestos-containing materials, products, or equipment, which exposure directly and proximately caused him to develop an illness known and designated as Mesothelioma.

17.     Defendants, acting by and through its servants, agents, and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, manufacture and sell products that were not unreasonably dangerous or defective and/or a duty to warn Mr. Hipwell and foreseeable users of said products of the dangers and defects which the Defendants created, knew, or, within the exercise of reasonable care, should have known.

18.     Mr. Hipwell, whose livelihood was dependent upon the work that he did for the various employers listed in Paragraph 9 above was required to work with and around asbestos and/or asbestos-containing products, materials or equipment that manufactured, processed, distributed, supplied and/or sold by Defendants. Defendants knew or should have known that persons employed such as Mr. Hipwell would be required to and would come into contact with and would work in close proximity to said products.

19.     Mr. Hipwell sustained injuries caused by no fault of his own and which could not be avoided through the use of his reasonable care. Mr. Hipwell's development of an asbestos-related disease was directly and proximately caused by the negligence and carelessness of defendants in that they manufactured, processed, sold, supplied or otherwise put said asbestos or asbestos-containing products, materials or equipment, into the market and into the stream of interstate commerce, while they knew, or in the exercise of ordinary care should have known, that said products were deleterious, poisonous,

cancer-causing and/or inherently dangerous and harmful to Mr. Hipwell's body, lungs, respiratory system, skin, health, and general well-being. Further, defendants knew or in the exercise of reasonable care should have known that Mr. Hipwell would not know of such danger to his health.

20.     Mr. Hipwell's illness and disability are the direct and proximate result of the negligence and carelessness of defendants, jointly and severally, in that, even though the defendants knew, or in the exercise of ordinary care should have known, that the asbestos and asbestos-containing materials, products or equipment were deleterious, poisonous, and highly harmful to plaintiffs body, lungs, respiratory system, skin, and health.

21.     Defendants breached their duties and were negligent in the following acts and/or omissions:

    (a)    Affirmatively chose not to advise Mr. Hipwell of the dangerous characteristics of their asbestos and/or asbestos-containing materials, products or equipment;

    (b)    Affirmatively chose not to provide Mr. Hipwell with the knowledge as to what would be reasonably safe and sufficient apparel and protective equipment and appliances to reduce exposure to inhalable asbestos fibers, if in truth they were in any way able to protect him from being poisoned and disabled as he was by exposure to such deleterious and harmful asbestos-containing materials, products or equipment;

    (c)    Affirmatively chose not to place any warnings or sufficient warnings on their containers of said asbestos and asbestos-containing materials, products or equipment to warn the handlers of the dangers to health in coming in contact with said asbestos and asbestos-containing materials, products or equipment;

    (d)    Affirmatively chose not to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan and a safe method of handling and installing said asbestos-containing materials, products or equipment;

    (e)    Inadequately warned, if, in fact, they warned at all, persons such as plaintiff of the dangers to their health in coming in contact with and breathing said

asbestos fibers from asbestos and/or asbestos-containing materials, products or equipment;

(f)    Chose not recommend methods to improve the work environment;

(g)    Affirmatively chose not develop alternative products;

(h)    Continued to use a known cancer-causing product, to-wit: asbestos; and

(i)    After discovering that the asbestos exposure caused a progressive lung disease, the defendants affirmatively chose not to inform the plaintiff of the need for monitoring and periodic evaluations up to and including the filing of this complaint.

22.    Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing asbestos and/or asbestos-containing products, materials or equipment into the stream of commerce, knew, or in the exercise of reasonable care, should have known about the risks associated with their products. The products in question were defective at the time they left the control of the defendants.

23.    Defendants were negligent and breached their duty of due care to Mr. Hipwell by taking or choosing not to take the actions as previously alleged to avoid harm to Mr. Hipwell and other foreseeable users, in light of the reasonably foreseeable dangers caused by the design, manufacture, sale, distribution of the asbestos and/or asbestos-containing products, materials, or equipment at issue in the stream of commerce.

24.    The hazards posed by exposure to asbestos and/or asbestos-containing products, materials, or equipment and the resulting injuries and damages to plaintiff were reasonably foreseeable or should have been reasonably foreseen by Defendants.

25.    As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, Mr. Hipwell developed Malignant Mesothelioma, as a consequence of which, through no fault of his own, he was severely injured, disabled and damaged.

26.     As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

## SECOND CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

27.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

28.     The defendants impliedly warranted that said asbestos materials were of good and merchantable quality and fit for their intended use.

29.     The implied warranty made by the defendants that the asbestos and asbestos-containing materials, products, or equipment were of good and merchantable quality and for the particular intended use was breached and that certain harmful, poisonous, and deleterious matter was given off into the atmosphere wherein Mr. Hipwell carried out his duties while working with or in the vicinity of asbestos and asbestos-containing materials, products, or equipment.

30.     As a direct and proximate result of the implied warranty of good and merchantable quality and fitness for the particular intended use, Mr. Hipwell developed an illness, to-wit: Mesothelioma.

31.     As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

## THIRD CAUSE OF ACTION
## GROSS NEGLIGENCE-WILFUL, WANTON, AND RECKLESS CONDUCT

32.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

33.     Mr. Hipwell and others in his position worked in close proximity to the

asbestos and asbestos-related materials used or manufactured by the defendants, and the exposure and hazard to each of them, in plaintiff's presence, as well as others in his position, was known, or in the exercise of reasonable care should have been anticipated, by the defendants.

34.    The defendants have known or should have known since at least 1929, and possibly as early as 1890, of medical and scientific data which clearly indicates that the products, asbestos, and asbestos-containing products, were hazardous to the health and safety of the plaintiff and others in the plaintiff's position, and prompted by pecuniary motives, the defendants, individually and collectively, ignored and chose not to act upon said medical and scientific data and conspired to deprive the public, and particularly the users, of said medical and scientific data, depriving them, therefore, of the opportunity of free choice as to whether or not to expose themselves to the asbestos products of said defendants. As a result, the plaintiff has been severely damaged as is set forth below.

35.    The defendants intentionally and fraudulently continued to conceal the dangers of asbestos exposure from 1929 through the 1970s, thus denying plaintiff the knowledge with which to take necessary safety precautions such as periodic x-rays and medical examinations, stop smoking, and avoiding further dust exposure. Specifically, Defendants' intentional and fraudulent conduct included the following acts and omissions:

(a)    affirmatively choosing not to warn prior users when the defendants had knowledge of the need for monitoring due to prior exposure;

(b)    affirmatively choosing not to issue recall type letters to prior users;

(c)    frustrating the publication of articles and literature from the 1930's through at least 1976;

(d)    rejection by top management of advice of corporate officials to warn of the hazards of their asbestos products; such rejection being motivated by the

possibility of adverse effects on profits; and

(e)     the intentional inadequacy of (and delay in the use of) the warnings on asbestos products.

36.     The affirmative acts of the defendants, and each of them, as hereinabove set forth were intentional and willful and done with willful disregard of the safety of Mr. Hipwell and others similarly situated at a time when defendants, and each of them, had knowledge, or should have had knowledge of the dangerous effect of asbestos and asbestos-containing materials, products, or equipment upon the body of human beings, including Mr. Hipwell and others similarly situated, and even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the defendants and subscribed to by them, nevertheless placed into the stream of commerce, for their own profit, this dangerous asbestos material with full knowledge that it was being used and would be used in the future to the detriment of the health of Mr. Hipwell and others similarly situated, and Plaintiff is thereby entitled to punitive damages.

37.     Accordingly, as a result of the Defendants' conduct in which they acted in willful, wanton, gross negligence and in total disregard for the health and safety of the user or consumer, such as Mr. Hipwell, Plaintiff therefore seeks exemplary and punitive damages against defendants to punish the defendants for their actions, which were willful, wanton, gross, and in total disregard of the health and safety of the users and consumers of their products.

## FOURTH CAUSE OF ACTION
## FALSE REPRESENTATION

38.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

39.     During, before, and after Mr. Hipwell's exposure to asbestos products manufactured, installed or otherwise used by defendants, defendants falsely represented facts, including the dangers of asbestos exposure, to Mr. Hipwell in the particulars alleged in the paragraphs above, while defendants each had actual knowledge of said dangers of asbestos exposure to persons such as Mr. Hipwell, and while defendants each knew of the falsity of their representations and/or made the representations in reckless disregard of their truth or falsity.

40.     The foregoing representations were material conditions precedent to plaintiff's continued exposure to asbestos containing products, and defendants each intended that plaintiff act upon the representations by continuing his exposure to the asbestos products. Mr. Hipwell was ignorant of the falsity of defendants' representations and rightfully relied upon the representations.

41.     As a direct and proximate result of Mr. Hipwell's reliance upon defendants' false representations, Plaintiff has suffered injury and damages hereinafter described.

**FIFTH CAUSE OF ACTION**
**FAILURE TO WARN**

42.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

43.     At all times material hereto, the Defendants knew or should have known of the harmful effects and/or harmful dangers of working with asbestos and/or asbestos-containing products, materials, or equipment and exposures to inhalable asbestos.

44.     Defendants had a duty to warn individuals working at Mr. Hipwell's jobsites, including but not limited to Mr. Hipwell, of the dangers associated with the use

and/or inhalation of asbestos dust and fibers.

45. Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment, Defendants affirmatively chose not to warn and/or inadequately warned Mr. Hipwell of the dangers, including but not limited to:

(a) choosing not to provide adequate cautions, warnings, and/or hazard statements and/or explanations with its products which should have been designed to provide Mr. Hipwell knowledge about the hazards caused by exposure to their products and how to eliminate such hazards;

(b) choosing not to provide adequate product inserts, informative brochures, employee training literature, posters, and/or other written materials with their products which should have been designed to provide Mr. Hipwell knowledge about the hazards caused by exposure to its products and how to eliminate such hazards;

(c) choosing not to conduct on-site personnel training sessions with exposed workers which should have been designed to provide to the workers knowledge about the hazards caused by exposure to the products, and how to eliminate the hazards;

(d) choosing not to adequately test and research their products as to the hazards created during their use and failed thereafter to provide the results of such tests and research to exposed workers such as Mr. Hipwell;

(e) choosing not to inspect the workplace in which their products were being used to determine whether the products being used were deleterious to the health of exposed workers;

(f) choosing not to design, process and transport their products in a manner intended to minimize exposure during normal working conditions;

(g) choosing not to specify and market their products on the express agreement that necessary engineering controls, work practices, and other industrial hygiene controls would be implemented in conjunction with use of the products after it was known or should have been known that adequate protective measures were not being implemented;

(h) choosing not to recall their defective product or manufacture a reasonably safer alternative;

(i) choosing not to take adequate precautions and industrial hygiene measures

to protect Mr. Hipwell and exposing workers when installing, repairing, or tearing out asbestos and/or asbestos-containing products, materials, or equipment including, but not limited to, providing protection from dust and fibers emanating from the installation, repair, and/or removal process; choosing not to use local ventilation; choosing not to provide warnings to Mr. Hipwell and workers in the facilities at issue that exposure to dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment was hazardous and carcinogenic; choosing not to adequately clean up debris from the installation, repair and/or removal process; failing to use wet down procedures; and/or failing to take other appropriate safety and industrial hygiene measures;

(j)     otherwise choosing not to act reasonably under the totality of the circumstances.

46.     Defendants manufactured, processed and/or sold asbestos and/or asbestos-containing products, materials, or equipment, for Mr. Hipwell's employer, and these products were used by Mr. Hipwell's various employers. Thus, Defendants had a duty to warn individuals working at Mr. Hipwell's jobsites, including but not limited to the Mr. Hipwell, of the dangers associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment.

47.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment, the Defendants acted unreasonably in choosing not to provide adequate warnings and/or instructions as to the hazards associated with exposure to asbestos and/or asbestos-containing products, materials, or equipment.

48.     At the time the asbestos and/or asbestos-containing products, materials, or equipment left Defendants' control without adequate warning or instruction, Defendants created an unreasonably dangerous condition that it knew or should have known would pose a substantial risk of harm to a reasonably foreseeable claimant, such as Mr. Hipwell. In the alternative, after the asbestos-containing products left Defendants' control,

Defendant became aware of or in the exercise of ordinary care should have known that their product posed a substantial risk of harm to a reasonably foreseeable user, such as Mr. Hipwell, and refused to take reasonable steps to give adequate warning or instruction or to take any other reasonable action under the circumstances.

49.     Defendants' conscious decision not to provide adequate warnings as to the hazards associated with exposure to asbestos and/or asbestos-containing products, materials, or equipment or to provide proper instructions on the use, handling, and storage of asbestos and/or asbestos-containing products, materials, or equipment caused Mr. Hipwell to develop Mesothelioma as a consequence of which he has been injured and damaged and claims damages of the Defendant jointly and severally.

50.     As a result of the Defendants affirmatively choosing not to warn, Plaintiff and Plaintiff's Decedent suffered and will continue to suffer the following injuries and damages hereinafter alleged.

**SIXTH CAUSE OF ACTION**
**UNIFORM VOIDABLE TRANSACTIONS ACT**

51.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

52.     This action is brought pursuant to the Utah Uniform Voidable Transactions Act, §25-6-101, *et seq*., for the fraudulent transfer of assets between defendants Ingersoll Rand Company, Trane Technologies LLC, and Aldrich Pump LLC with intent to hinder, delay, or defraud Plaintiff and individuals such as Plaintiff from meaningful recovery for Defendants fraudulent and tortious acts.

53.     Since Mr. Hipwell's exposure to asbestos products manufactured, installed

or otherwise used by defendants, and the exposure of similarly situated individuals who, like Mr. Hipwell, have developed asbestos-related diseases, defendants Ingersoll Rand Company, Trane Technologies LLC, and Aldrich Pump LLC fraudulently engaged in the transfer of assets, liabilities, and/or obligations with the intent to hinder, delay, or defraud creditors such as Plaintiff.

54.     Defendant Trane Technologies Company LLC was formed in Texas on April 30, 2020.  On May 1, 2020, Aldrich Pump LLC was formed in Texas and subsequently reincorporated in North Carolina.  On May 1, 2020, Ingersoll Rand Company was merged into Trane Technologies Company LLC and Trane Technologies Company LLC reincorporated itself in Delaware.

55.     The formation, merger, and reincorporation of Defendants Ingersoll Rand Company, Trane Technologies Company LLC, and Aldrich Pump LLC was made at a time when these defendants knew or should have known that Plaintiff and other similarly situated creditors had claims that had arisen or would subsequently arise after this transfer was made or the obligation made part of the formation, merger, and reincorporation of Defendants Ingersoll Rand Company, Trane Technologies Company LLC, and Aldrich Pump LLC incurred.

56.     The formation, merger, and reincorporation of Defendants Ingersoll Rand Company, Trane Technologies Company LLC, and Aldrich Pump LLC was made with the intent to hinder, delay, or defraud creditors such as Plaintiff and incurred without the exchange of reasonably equivalent value for the transfer or obligations resulting in a business or a transaction for which the remaining assets of Defendant Ingersoll Rand Company, Trane Technologies Company LLC, and/or Aldrich Pump LLC are

unreasonably small in relation to the business or transaction.

57.     The formation, merger, and reincorporation of Defendants Ingersoll Rand Company, Trane Technologies Company LLC, and Aldrich Pump LLC was made with the intent to hinder, delay, or defraud creditors such as Plaintiff and incurred without the exchange of reasonably equivalent value for the transfer or obligations when Defendants Ingersoll Rand Company, Trane Technologies Company LLC, and/or Aldrich Pump LLC intended to incur, or believed or reasonably should have believed that Ingersoll Rand Company, Trane Technologies Company LLC, and/or Aldrich Pump LLC would incur debts beyond its ability to pay as they became due.

58.     As a direct and proximate result of Ingersoll Rand Company, Trane Technologies Company LLC, and/or Aldrich Pump LLCs' fraud, Plaintiff has suffered injury and damages hereinafter described.

59.     As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

**PUNITIVE DAMAGES**

60.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

61.     As a result of the willful, wanton and gross misconduct and gross negligence of the Defendants as alleged herein, the Plaintiff seeks and requests punitive or exemplary damages. Defendants malicious and outrageous disregard for the safety of users of asbestos products, including Plaintiff's Decedent, including but not limited to their intentional concealment of the dangers of asbestos that they knew of yet consciously refused to warn users of those dangers evidences a conscious indifference to the safety and

health of users and bystanders of the products they profited from selling. Plaintiff, therefore, seeks punitive damages or exemplary damages, according to proof.

## **DAMAGES**

62.   Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

63.   Plaintiff files this action under and pursuant to Utah Wrongful Death Act, §78B-3-106 *et seq.*, and Utah Survival Action, §78B-3-107, *et seq.*, and seeks to recover any and all damages allowable and incurred by the Estate of Keith W. Hipwell and all beneficiaries.

64.   Plaintiff files this action under and pursuant to Utah Uniform Voidable Transactions Act, §25-6-101, *et seq.*, and seeks any and all relief allowable and incurred by the Estate of Keith W. Hipwell and all beneficiaries.

65.   As a result of the above-alleged conduct of the Defendants, the decedent developed Mesothelioma, as a consequence of which, he has been damaged as follows:

(a)  for hospital and medical expenses incidental to decedent's last illness;

(b)  for loss of earnings and future earning power of the decedent;

(c)  for the loss of decedent's general health, strength, and vitality;

(d)  for the loss of pecuniary contributions to the Plaintiff;

(e)  for the loss of consortium, society, aid, companionship and services to the Plaintiff;

(f)  for the future loss of consortium, society, aid, companionship and services to the Plaintiff;

(g)  for the pain and suffering of the decedent;

(h)  for all other damages recoverable under said Act.

## DAMAGES FOR LOSS OF CONSORTIUM

66.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

67.     As a direct and proximate result of the injuries and damages complained of herein with respect to Mr. Hipwell, and as a direct and proximate result of the acts and omissions of the defendants, Mrs. Hipwell, his spouse, has also suffered and will continue to suffer loss of the consortium, society, companionship, fellowship and other valuable services of her husband; and therefore Mrs. Hipwell, is entitled to damages for her loss of consortium, both past and future. Mr. Hipwell was been unable to perform the necessary duties of a spouse and the work and service usually performed in the care, maintenance, and management of the family home, and Mr. Hipwell will be unable to perform such work, services, and duties in the future. As a proximate result thereof, Mrs. Hipwell has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown to Plaintiff but which will be proved at the time of trial.

**WHEREFORE**, the Plaintiff prays for judgment against all Defendants for actual and punitive damages, lost wages and special damages in amounts to be determined by the trier of fact, and plus costs of this action.

## PLAINTIFFS REQUEST TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

THE NEMEROFF LAW FIRM

_____
Richard I. Nemeroff, #13966
5532 Lillehammer Lane, Ste. 100
Park City, UT  84098
Tel:  435-602-4470
Fax:  435-602-4471
E-mail:  ricknemeroff@nemerofflaw.com

Attorney for Plaintiff

## <u>DEFENDANT SERVICE LIST</u>

Air & Liquid Systems Corp., as successor by merger to Buffalo Pumps, Inc.
c/o James E. Miller
1680 S. Livernois
Suite 200
Rochester Hills, MI 48307

Aldrich Pump LLC
Corporation Service Company
2626 Glenwood Avenue, Suite 550
Raleigh, NC 27608

CBS/Westinghouse
CBS Corp., a Delaware Corp., f/k/a Viacom, Inc., successor by merger to CBS Corp.,
f/k/a Westinghouse Electric Corporation
Eckert Seamans Cherin & Mellott, LLC
Case Management & Technology Center
600 Grant Street, 5th Floor
Pittsburgh, PA 15219

CBS Corporation, f/k/a Viacom, Inc., successor by merger with CBS Corporation f/k/a
Westinghouse Electric Corporation and as successor-in-interest to BF Sturtevant
Eckert Seamans Cherin & Mellott, LLC
Case Management & Technology Center
600 Grant Street, 5th Floor
Pittsburgh, PA 15219

Cleaver Brooks, Inc., f/k/a Aqua-Chem, Inc., d/b/a Cleaver-Brooks Division, Individually
and as Successor-in-Interest to Springfield Boilers
c/o President or Other Officer
11950 West Lake Park Drive
Milwaukee, WI 53224

Tuthill Corporation (Coppus Turbines)
299 Lincoln Street, Ste. 300
Worcester, MA 01605

Crane Co.
c/o CT Corporation System
1108 E. South Union Avenue
Midvale, UT 84047

Elliott Company, f/k/a Elliott Turbo Machinery Co., Inc.
c/o CT Corporation System
1108 E South Union Avenue
Midvale, UT 84047

Foster Wheeler Energy Corporation
c/o United Agent Group, Inc.
2825 East Cottonwood Parkway, Suite 500
Salt Lake City, UT 84121

Gardner Denver, Inc.
c/o CT Corporation System
1108 E. South Union Avenue
Midvale, UT 84047

General Electric Company
c/o CT Corporation System
1108 E South Union Avenue
Midvale, UT 84047

Goulds Pumps, LLC
c/o CT Corporation System
1108 E. South Union Avenue
Midvale, UT 84047

Grinnell Corporation
c/o CT Corporation System
1108 E. South Union Avenue
Midvale, UT 84047

IMO Industries, Inc., f/k/a IMO DeLaval, Inc.
c/o CT Corporation System
1108 E. South Union Avenue
Midvale, UT  84047

Ingersoll Rand Company
Corporation Service Company
15 West South Temple, Suite 600
Salt Lake City, UT 84101

The Gorman-Rupp Company, individually and as successor-in-interest to Griscom-
Russell Company
Corporation Service Company
50 West Broad Street
Suite 1300
Columbus, OH 43215

Superior Boiler Works, Inc.
c/o R. Doug Wright
3524 E. 4th Street
Hutchinson, KS  67501

Trane Technologies Company LLC
Corporation Service Company
15 West South Temple, Suite 600
Salt Lake City, UT 84101

Warren Pumps, LLC
CT Corporation-Los Angeles
818 West 7th Street, 2nd Floor
Los Angeles, CA  90017

Zurn Industries, LLC, f/k/a Zurn Industries, Inc., individually and as successor-by-merger
to Erie City Iron Works
c/o CT Corporation System
1108 E. South Union Avenue
Midvale, UT 84047